# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION

### CIVIL CASE NO. 2:09cv29

| | | |
|---|---|---|
| CASEY ELLISON GIBBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Attorney's Fees under the Equal Access to Justice Act and the Social Security Act [Doc. 18].

## PROCEDURAL HISTORY

On May 12, 2009, the Plaintiff initiated this action for judicial review of the denial of her application for Social Security Disability Benefits and for an award of benefits based on an onset date of disability of July 18, 2003. [Doc. 1]. The Complaint and the Motion for Summary Judgment were signed only by Russell Bowling (Bowling) as the attorney for the Plaintiff. [Id.; Doc. 8]. However, the Memorandum of Law in support of the Plaintiff's Motion for

Summary Judgment was signed by Charles Martin (Martin) as attorney for the Plaintiff "On the brief." [Doc. 9 at 30]. Because of this discrepancy, the Court required Martin to seek admission to practice in this Court *pro hac vice*. [Doc. 12]. Martin was subsequently so admitted.[1] [Doc. 14].

On October 28, 2011, the Plaintiff's Motion for Summary Judgment was granted to the extent that she sought reversal of the Commissioner's decision denying her disability benefits. [Doc. 26]. To the extent that she sought an immediate award of benefits, the motion was denied. [Id.]. The Court remanded the case pursuant to Sentence Four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with the decision.[2] [Id.]. As a result, the Defendant's Motion for Summary Judgment was denied. [Id.]. Judgment was simultaneously entered reversing the Commissioner's decision and remanding the case. [Doc. 17].

On January 25, 2012, the Plaintiff timely filed the pending motion seeking attorney's fees.[3] [Doc. 18]. The title of the motion seeks fees

_____

[1]This admission avoided the issues presented in Priestley v. Astrue, 651 F.3d 410 (4th Cir. 2011), as to Martin.

[2]Specifically, the case was remanded for further development of the issue of the Plaintiff's mental retardation in order to determine whether the Plaintiff meets the requirements of 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.05. [Id. at 7-10].

[3]The motion for fees was timely because it was filed within thirty days of the date the Judgment became final; that is, upon the expiration of the time for appeal. Shalala

pursuant to both the Equal Access to Justice Act (EAJA), 28 U.S.C. §2412(d) and the Social Security Act, 42 U.S.C. §406(b). [Doc. 18]. Because there has not been an award of past-due benefits, however, the Court will only address the request for fees pursuant to EAJA. 42 U.S.C. §406(b)(1)(A). Indeed, the demand for relief refers only to fees pursuant to EAJA. [Doc. 19 at 2].

The Defendant responded to the motion for an award of fees, making specific objections thereto. [Doc. 20]. The Plaintiff thereafter filed a reply. [Doc. 21].

## STANDARD OF REVIEW

EAJA provides that a district court "shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action" against the United States, or an agency thereof, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A). Here, the Defendant does not dispute that the Plaintiff was a prevailing party.[4] [Doc. 32]. Nor does he claim that the position of the agency was substantially justified

---

v. Schaefer, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). When the United States or an agency thereof is a party, the time within which a notice of appeal may be filed is sixty days after entry of the judgment. Fed.R.App.P. 4(a)(1)(B).

[4]A party achieving a Sentence Four remand is a prevailing party. Shalala, 509 U.S. at 300-302.

3

or that special circumstances make an award unjust.  [Id.].  The Defendant

does, however, object to both the time spent and the hourly rate requested by

counsel.  [Id.].

EAJA provides for an award of "reasonable" attorney's fees.  28 U.S.C.

§2412(d)(2)(A).

> The most useful starting point for determining the amount of a
> reasonable fee is the number of hours reasonably expended on
> the litigation multiplied by a reasonable hourly rate.    This
> calculation provides an objective basis on which to make an initial
> estimate of the value of a lawyer's services.  The party seeking an
> award of fees should submit evidence supporting the hours
> worked and rates claimed.  Where the documentation of hours is
> inadequate, the district court may reduce the award accordingly.
> The district court should also exclude from this initial fee
> calculation hours that were not "reasonably expended."  Cases
> may be overstaffed, and the skill and experience of lawyers vary
> widely.  Counsel for the prevailing party should make a good faith
> effort to exclude from a fee request hours that are excessive,
> redundant, or otherwise unnecessary, just as a lawyer in private
> practice ethically is obligated to exclude such hours from his fee
> submission. ...  Hours that are not properly billed to one's *client*
> also are not properly billed to one's *adversary* pursuant to
> statutory authority.

Hensley v. Echerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983), abrogated on other grounds by Texas State Teachers Ass'n v.

Garland Independent School District, 489 U.S. 782, 109 S.Ct. 1486, 103

L.Ed.2d 866 (1989)) (internal quotation and citation omitted) (emphasis in

original).  The fee applicant bears the burden of establishing the reasonable

time expended as well as a reasonable hourly rate. Hyatt v. Barnhart, 315 F.3d 239, 253 (4th Cir. 2002).

## DISCUSSION

The first review is of the hours spent in the representation of the Plaintiff in this Court. The Complaint filed in this action is a mere two pages in length. [Doc. 1]. Bowling, however, has provided an affidavit in which he states that his paralegal expended 1.0 hour drafting the Complaint and he spent .50 hour reviewing it. [Doc. 19-3 at 5]. The Court finds this amount unreasonable in view of the length of the Complaint and the lack of detail contained therein. Louis v. Astrue, 2012 WL 92884 **4-5 (E.D.Cal. 2012) (reducing time in view of "the *pro forma* nature of ... the complaint"). The compensable time will therefore be reduced to .50 hour of paralegal time for drafting and .25 hour for review by the attorney.

Bowling has listed 1hour of time expended by his paralegal for the filing of documents and .50 hour spent by him to file Martin's motion for admission to the Court *pro hac vice*. [Doc. 19-3 at 5]. The filing of a document is a "purely clerical or secretarial" activity which is not billable at a paralegal's rate or, indeed, any rate at all since such tasks are included in office overhead. Holmes v. Astrue, 2010 WL 3220085 **2 (D.S.C. 2010) (quoting Missouri v.

Jenkins, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

Thus, "[w]hen clerical tasks are billed at hourly rates, the court should reduce

the hours requested to account for the billing errors." Nadarajah v. Holder,

569 F.3d 906, 921 (9th Cir. 2009). This time will therefore be excluded.

Bowling states that he spent .50 hour reviewing the Defendant's Answer

to the Complaint. [Doc. 19-3 at 5]. The Answer, which is standard in both form

and content, is a mere two and one-half pages in length. [Doc. 6]. It is difficult

to understand why an attorney of Bowling's experience would require this

much time to review it. The time will be reduced to .25 hour.

Likewise, Bowling spent .20 hour reviewing the Scheduling Order, a task

which is usually performed by staff. [Doc. 19-3 at 5]. Giving Bowling the

benefit of supervisory control over such staff, the time will be reduced to .10

hour. The time records show that Bowling spent as much time reviewing this

Court's one page Order (Doc. 14) granting Martin's request for *pro hac vice*

admission as he did reviewing the Court's ten page Memorandum of Decision

and Order (Doc. 16) granting the Plaintiff relief. [Id.]. The time spent reviewing

the grant of admission will be reduced to .10 hour.

Applying these reductions to Bowling's services, his request for

attorney's fees is reduced to 4.00 hours. Bowling's paralegal time is reduced

to .90 hours.

Martin has provided an affidavit in which he states that he provided 5.30 hours of "brief writing services" to Bowling. [Doc. 19-4 at 1]. The time sheet, however, discloses that Martin verified service on the Defendant, noted that the Defendant had filed the administrative record, noted that the case had been assigned to a different judge, and noted that defense counsel had been substituted. [Id. at 4]. None of these tasks constitute brief writing; they are instead administrative functions that are more appropriately performed by staff. Holmes, 2010 WL 3220085. Martin also lists time which was duplicative of the same tasks performed by Bowling, such as reviewing the Scheduling Order and Answer, performing revisions to the memorandum of law and reviewing the Defendant's Motion for Summary Judgment. [Doc. 19-4 at 4]. These functions are redundant of time spent by Bowling and/or his paralegal. Hensley, 461 U.S. at 434 ("Cases may be overstaffed[.]" Counsel should "exclude from a fee request hours that are excessive [and] redundant[.]"). "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistants." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 553 (7th Cir. 1999). Martin's time

is therefore reduced to a total of 1.30 hours.

Jane Muller Peterson (Peterson) is an associate with Martin's firm. [Doc. 19-5 at 2]. She is admitted to the bar of the District Courts of the Middle Districts of Wisconsin and Pennsylvania. [Id at 1]. She was not admitted *pro hac vice* in this Court and she was not listed on the Memorandum of Law as counsel "on the brief." [Doc. 9 at 30]. Indeed, the first time the Court became aware of Peterson's extensive involvement in this case was when the pending motion for an award of fees was filed.[5] Had the Court been made aware of her involvement, she would have been required to move for admission to the Court *pro hac vice*, just as Martin was required to do so. Indeed, in the Order requiring Martin to make such a filing, this Court ruled as follows:

> The Court will allow Mr. Martin to apply for admission in this matter *pro hac vice*, with that admission to be *nunc pro tunc* to the filing of the case. **If any other attorneys who are not licensed to practice before this Court have likewise actively participated in the representation of the Plaintiff in this matter, such other attorneys must also apply for admission *pro hac vice* within the same time period as allowed for Mr. Martin.**

[Doc. 12 at 5-6] (emphasis added).

Both Bowling and Martin have filed affidavits in which they stated that this language was reviewed; and, indeed, each seeks to be paid for such

---

[5]Peterson claims to have performed 41.50 hours of legal writing. [Doc. 19-5 at 4].

review. [Doc. 19-3 at 5; Doc. 19-4 at 4]. Despite the directive contained within the Order, neither of them disclosed Peterson's involvement to the Court. It is likely that Peterson herself was completely unaware of the directive contained within this Order. Bowling and Martin, however, will be required to explain why they did not disclose her involvement.[6]

In determining whether and to what extent the Plaintiff may receive an award of attorney's fees in connection with Peterson's services, this Court is constrained by the recent decision of the United States Court of Appeals for the Fourth Circuit in <u>Priestley</u>.

> EAJA authorizes the plaintiffs to receive reimbursement for work performed by an attorney, regardless of whether the attorney performing the work is admitted to practice or not. We therefore conclude that the EAJA authorizes reimbursement for work of the type performed by Martin and Naides in assisting [counsel of record] with brief writing and related tasks.
> ...
> Martin and Naides never physically appeared in court or before the judge; they never filed a brief or paper in court; they never communicated with opposing counsel; they never even communicated with the plaintiffs; their work agreement was with McChesney, a member of the district court bar, and not with the plaintiffs; and they prepared only drafts of briefs and papers which they then submitted to McChesney for editing, signing, and filings with the court. Even though their names were sometimes included on briefs as attorneys for the plaintiffs and they stated in their EAJA affidavits that they were attorneys for plaintiffs, the

---

[6]Bowling is the attorney of record for the Plaintiff and Martin presumably supervises Peterson, who is an associate with his firm.

nature of their brief-writing function in supporting McChesney never changed.

...

McChesney "acted as a filter" between the plaintiffs and Martin and Naides, the nonadmitted Social Security specialists, with the result that their brief-writing assistance was likewise permissible. While it may be unjust to compensate individuals who, without proper licensure, directly represent clients and, on their behalf, file papers and appear before the court, there is nothing inequitable or "unclean" about the supporting role that Martin and Naides actually played in these cases.

...

Because the EAJA provides reimbursement for fees incurred by persons, whether licensed attorneys or not, we believe that the district court must reconsider the fees of Martin and Naides. To be sure, it could choose to treat them as nonattorneys who provided support to McChesney, similar in nature to the work performed by other nonadmitted attorneys, such as law clerks or paralegals. ... The court should take the work of Martin and Naides at least as the work of nonattorneys who provided McChesney support in writing briefs. But it is also free to take their work as falling in the class of attorney work for which admission to the district court might not be necessary. In calculating any fee awards for the work performed by Martin and Naides, the district court should determine the prevailing market rate for services of the kind provided by them, based on their training, skill and experience; provided that in no event may this rate be less than the rate traditionally used for summer associates, paralegals, and other nonattorneys performing legal work.

Priestley, 651 F.3d at 416-19.

Peterson has provided an affidavit in which she documented 41.50 hours of "legal services." [Doc. 19-5 at 3]. On the time sheet, those services are described as drafting briefs. [Id.]. Bowling has provided an affidavit in

which he describes Peterson's role as "reviewing the transcript and preparing the statement of the case, and writing the brief in support of Russell R. Bowling." [Doc. 19 at 2]. In his role as counsel of record, Bowling "[p]roofread, reviewed and made changes to Memorandum in Support of Motion for Summary Judgment." [Doc. 19-3 at 5]. All filings were performed by Bowling's staff. [Id.]. The record does not disclose that Peterson had any contact with the Plaintiff or opposing counsel. The Court therefore concludes that the Plaintiff is entitled to recover a reasonable fee for the services of Peterson. Carroll v. Astrue, __ F.Supp.2d __, 2012 WL 379996 (W.D.N.C. 2012).

The Defendant has objected to the time expended by Peterson in preparing the Plaintiff's Motion for Summary Judgment. [Doc. 20]. He has pointed out that, while counsel here seek reimbursement for 52 hours, the majority of social security cases before district courts yield attorney time of between twenty and forty hours. [Id. at 3]. The Court agrees with this assessment. Patterson v. Apfel, 99 F.Supp.2d 1212, 1214 n.2 (C.D.Cal. 2000) (survey of social security disability cases shows an average range of twenty to forty hours). The transcript reveals, as argued by the Defendant, that the legal theory asserted in this Court mirrored that presented to the Appeals Council. [T. 423-24]. And, the Court finds that the case did not

present a level of complexity unusual to Social Security cases. [Doc. 9]. The Defendant argues that the amount of time expended by Peterson was due to her inexperience in the field. [Doc. 20 at 4]. He thus objects to an award based on a total of 41.50 hours of time expended by Peterson.

Peterson's work in this case was performed in August 2009 and she has disclosed that her first representation of Social Security disability claimants in federal appeals began in June 2009. [Doc. 19-5 at 2-3]. "Looking at counsel's billing statements, it is clear it was not the complexity of the case that caused the lengthy expense of time, but rather the inexperience of new counsel." Harden v.Commissioner, 497 F.Supp.2d 1214, 1216 (D.Or. 2007). Both Bowling and Martin have significant experience in social security matters. Id. Peterson, however, was admittedly new to the practice. Id. While the time she spent on this brief may be reasonable for an attorney inexperienced in this area of the law, it is not reasonable "to shift the total financial burden of training new counsel onto the government." Id. (citing DeGennaro v. Bowen, 666 F.Supp. 426, 428 (E.D.N.Y. 1987). "[A]ccounting for various levels of experience is one of the things the Supreme Court was referring to when it instructed counsel to exercise 'billing judgment' in requesting fees." Id. (citing Hensley, 461 U.S. at 434). The Court will

therefore reduce the requested hours to bring the total within the range that an experienced attorney would normally request for the same or similar work. Tibbits v. Chater, 1995 WL 783212 (D.Kan. 1995).

In this regard, the Court would not be inclined to reduce the time spent in reviewing the administrative record but instead the time spent in drafting the brief. Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (court should examine hours allotted to specific tasks). Counsel, however, did not separate the time spent reviewing the record from the time spent in writing. Id. (court may discount requested hours if attorney failed to keep meticulous time records disclosing how time was allotted to specific tasks). Since Peterson failed to separate those items, the Court finds that an attorney experienced in this field should have been able to review the administrative record and produce a brief in a case such as this one within twenty-five hours. Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983), overruled on other grounds Pennsylvania v. Del. Valey Citizens' Council for Clean Air, 483 U.S. 711, 725, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (district court should approach the evaluation of time spent "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients ... ."). Peterson's time is therefore reduced to 25 hours.

The application is therefore reduced to a total of 30.30 hours for attorney time and .90 hour for paralegal time.

Next, the reasonableness of the hourly rate is considered. EAJA provides that the "amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living ...  justifies a higher fee."[7] 28 U.S.C. §2412(d)(2)(A).  The decision to make an upward adjustment of the statutory cap is a matter within the Court's sound discretion.  Payne v. Sullivan, 977 F.2d 900, 901 (4th Cir. 1992).

"Almost every court that has applied [§2412(d)(2)(A)] has held ... that 'cost of living' has th[e] ordinary meaning [of costs of food, shelter, clothing and other basic goods and services] and is properly measured by the Consumer Price Index."  Harris v. Sullivan, 968 F.2d 263, 265 (2nd Cir. 1992) (collecting cases); Sullivan v. Sullivan, 958 F.2d 574 (4th Cir. 1992) (a general cost of living index such as the United States Department of Labor's Consumer price Index for all urban consumers is the appropriate measure by which to calculate a cost of living enhancement to a statutory fee); Deitz v.

_____

[7]Although the statute provides for an increase when the case involves a "special factor," the Plaintiff here has not presented this issue.

14

Astrue, 2011 WL 4368377 (W.D.N.C. 2011). "The Consumer Price Index data published by the Bureau of Labor Statistics reflects that the cost of living increased from 155.7 in March 1996, the date that the statutory rate of $125 per hour was established," to an average rate of 224.939 in 2011. Senechal v. Astrue, 2011 WL 1843189 **2 (W.D.N.C. 2011); [Doc. 20 at 7 n.3].

The Plaintiff seeks an hourly rate of $181.78 which is represented to be the $125.00 hourly rate prescribed by EAJA adjusted for inflation by 45.42%. [Doc. 19 at 3]. The Defendant objects, noting that the Plaintiff has applied the inflation adjustment uniformly instead of using the applicable adjustment for each individual year. [Doc. 20 at 6-7]. The Plaintiff has replied that she does not object to the methodology used by the Defendant. [Doc. 21 at 4].

This case was filed in May 2009 with attorney's services performed in that year as well as 2010 and 2011 until the Judgment remanding the action was entered. The application for an award of attorney's fees was performed in 2012. The hourly rate pursuant to EAJA, therefore, "should only be increased by the corresponding Consumer Price Index for each year in which the legal work was performed." Kerin v. U.S. Postal Service, 218 F.3d 185, 194 (2nd Cir. 2000).

> 28 U.S.C. §2412(d) does not authorize indexing attorney's fees awards at current rates. If a cost of living adjustment is applied,

it must be calculated with regard to when the services were performed, not on the basis of when the award is made. Thus, fees incurred in a particular year must be indexed using the cost of living multiplier applicable to that year, and so on for each year in which fees were incurred.

Marcus v. Shalala, 17 F.3d 1033, 1040 (7th Cir. 1994); Kerin, 218 F.3d at 194 ("Using a single cap reflecting the cost of living in [2011] for all nine years to calculate the amount of attorney's fees would result in a *de facto* award of pre-judgment interest, which would constitute an abuse of discretion."); Dixon v. Astrue, 2008 WL 360989 **4 (E.D.N.C. 2008).

The Court, having reviewed the Defendant's position and finding it legally correct, adopts it. The Defendant has properly calculated those rates as follows: (1) $172.24 per hour for the year 2009; (2) $175.06 per hour for 2010; and (3) $180.59 per hour for 2011 and 2012. [Doc. 20 at 6 n.1, 7]; Ramon-Sepulveda v. I.N.S., 863 F.2d 1458, 1463 n.4 (9th Cir. 1988), abrogated on other grounds by Sorenson v. Mink, 239 F.3d 1140, 1148-49 (9th Cir. 2001); Deitz, 2011 WL 4368377 (using the same formula to derive the inflation adjusted fee cap).

The attorney's fees for each year are therefore calculated as follows:

(1)    28.6 hours performed in 2009 at the hourly rate of $172.24 = $4,926.06;

(2)    3.2 hours performed in 2010 at the hourly rate of $175.06 = $560.19;

(3)     1.30 hours performed in 2011 and 2012 at the hourly rate of $180.59 =

        $234.77;

(4)     Total attorney's fees = $5,721.02.

The Court therefore finds that the "increase in the cost of living justifies

a corresponding increase in the hourly rate in this case. [T]his higher hourly

rate is consistent with the prevailing market rates for services charged by

lawyers of similar talents and experience in this District."[8] Senechal, 2011 WL

1843189 **2.

The Plaintiff also claims fees for paralegal services performed at the

hourly rate of $65.00.  The Defendant has not objected and the Court

therefore finds this rate is reasonable and in keeping with the prevailing

market rates for paralegals in this District.  Trim v. Astrue, 2012 WL 1340671

**2 n.1 (W.D.N.C. 2012).  Applying the hourly rate of $65.00 to .90 hours of

paralegal time, the Plaintiff is entitled to an award of $58.59 for paralegal

services.

The Plaintiff has attached to the motion a copy of the fee agreement

entered into with Bowling in which she assigns any attorney's fee award

---

[8]The Plaintiff attached to her motion affidavits from attorneys in this District in
which the prevailing market rates for social security attorneys were addressed.  [Doc.
19-6 through 10-10].

pursuant to EAJA directly to counsel. [Doc. 18-1]. The Court finds that the Commissioner should accept the assignment of the awarded fees by the Plaintiff to her attorney and shall pay that award of fees directly to Plaintiff's counsel; provided however, it is shown that as of the date of this Order, the Plaintiff does not owe any debt to the United States Government which is subject to offset. <u>Astrue v. Ratliff</u>, __ U.S. __, 130 S.Ct. 2521, 177 L.Ed.2d 91 (2010). In the event that the Plaintiff does, in fact, owe the United States Government any debt subject to offset, the Commissioner shall pay any attorney's fees remaining after such offset to the Plaintiff instead of to her attorney.

In addition, should counsel receive an attorney's fee award pursuant to the Social Security Act, he shall refund to the Plaintiff the smaller award. 42 U.S.C. §406(b)(2).

Plaintiff's counsel seeks reimbursement for the $250.00 filing fee incurred by Martin when, in compliance with this Court's Order, he moved for admission *pro hac vice.* No statutory or case law in support of that request is cited. In her Reply, the Plaintiff argues that Martin was forced to incur this expense due to the Court's Order requiring that he move for such admission. [Doc. 21 at 3-4]. In that Order, this Court wrote:

> The Court will strongly emphasize ... that *pro hac vice* admission is not a substitute for being licensed to practice in this Court. The Court is willing to allow *pro hac vice* admission to an attorney otherwise unlicensed in this District only a limited number of times. Thereafter, obtaining a permanent license for practice in this Court will be necessary for such attorney to appear any further. Otherwise this Court would serve to by-pass the very important function played by the Board of Law Examiners and the State Bar of North Carolina.

[Doc. 12 at 6].

The role of this Court in requiring such admission was recognized by the Fourth Circuit in <u>Priestley</u>. "The district court was, of course, rightfully concerned about the unauthorized practice of law in its court, and it has the authority to regulate that through local rules and an array of appropriate sanctions." <u>Priestley</u>, 651 F.3d at 416. Requiring Martin to move for admission *pro hac vice* was thus within this Court's inherent authority. 28 U.S.C. §1651.

In addition, *pro hac vice* fees are not subject to taxation as a cost pursuant to 28 U.S.C. §1920 because they are an expense of counsel, not the client. <u>Moss v. Spartanburg County School Dist. No. 7</u>, 2011 WL 1870280 (D.S.C. 2011). *Pro hac vice* fees "are an expense that an attorney pays for the privilege of practicing law in a district and should not be taxed to a [defendant] simply because a [plaintiff] chooses to be represented by counsel

19

not admitted to practice in the district." Lofton v. McNeil Consumer & Specialty Pharmaceuticals, 2011 WL 206165 **1 (N.D.Tex. 2011); but see Craftsmen Louisiana, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009).

Finally, the Court will require Bowling and Martin to show cause why they should not be sanctioned for failing to disclose to the Court that Peterson was performing brief writing services without admission *pro hac vice*.

> District courts have inherent power to issue sanctions, a power which is not governed by rules of procedure or statutes but by the control vested in courts to manage their affairs in such a way as to efficiently dispose of cases.

Kochensparger v. Astrue, 2012 WL 1944862 **3 (W.D.N.C. 2012) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax [sanctions] against a party who has litigated in bad faith, it may certainly assess [sanctions] against counsel who willfully abuse judicial processes.

In re Crescent City Estates, LLC, 588 F.3d 822, 831 (4th Cir.), cert. denied __ U.S. __, 130 S.Ct. 3278, 176 L.Ed.2d 1184 (2010) (internal quotation and citation omitted).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Attorney's Fees under the Equal Access to Justice Act [Doc. 18] is hereby **GRANTED** in part and **DENIED** in part as stated herein and the Plaintiff is hereby awarded attorney's fees in the amount of Five Thousand Seven Hundred Seventy-Nine Dollars and Sixty-One Cents ($5,779.61) which sum is in full satisfaction of any and all claims by the Plaintiff in this case pursuant to EAJA, 28 U.S.C. §2412(d), and subject to the limitations set forth herein.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Attorney's Fees under the Social Security Act [Doc. 18] is hereby **DENIED** as premature.

**IT IS FURTHER ORDERED** that the Commissioner shall inform Plaintiff's counsel whether the Plaintiff owes a debt to the Government by which this fee award may be offset no later that thirty (30) days from entry of this Order. Provided that the Plaintiff does not owe any debt to the United States Government which is subject to offset, the Commissioner shall honor the Assignment of fees. In the event that the Plaintiff does, however, owe the United States Government any debt subject to offset, the Commissioner shall pay any attorney's fees remaining after such offset to the Plaintiff instead of to his attorney.

**IT IS FURTHER ORDERED** that no additional Petition pursuant to 28 U.S.C. §2412(d) may be filed.

**IT IS FURTHER ORDERED** that on or before fifteen (15) days from entry of this Order, Attorneys Russell Bowling and Charles Martin shall show cause why either or both of them may not be sanctioned pursuant to this Court's inherent power for the failure to comply with the directive of the Court contained in its Order on July 6, 2010 [Doc. 12] and/or for the failure to disclose to the Court the involvement of Attorney Jane Muller Peterson.

Signed: August 2, 2012

Martin Reidinger
United States District Judge